*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0257P (6th Cir.)
File Name: 03a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BOBBY BROWN,
  *Plaintiff-Appellant,*

  *v.*                                  No. 01-5864

PACKAGING CORPORATION OF
AMERICA,
  *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 00-01049—James D. Todd, Chief District Judge.

Argued: January 28, 2003

Decided and Filed: July 29, 2003

Before: NELSON and CLAY, Circuit Judges; HAYNES,
District Judge.[*]

---

[*] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

---

## COUNSEL

**ARGUED:** Victor I. Fleitas, Tupelo, Mississippi, for Appellant. Marcus M. Crider, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee. **ON BRIEF:** Victor I. Fleitas, Tupelo, Mississippi, Jim D. Waide, WAIDE & ASSOCIATES, Tupelo, Mississippi, for Appellant. Marcus M. Crider, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, Mark E. Stamelos, KING & BALLOW, Nashville, Tennessee, for Appellee.

NELSON, J., announced the judgment of the court and delivered an opinion, in which CLAY, J. and HAYNES, D. J., concurred except as to Part II B. CLAY, J. (pp. 17-25), delivered a separate opinion, in which HAYNES, D. J., concurred, which constitutes the opinion of the court on the issue discussed in Part II B.

---

## OPINION

---

DAVID A. NELSON, Circuit Judge. This is an appeal from a judgment entered on a verdict for the employer in an age discrimination case. The main issue we are asked to decide is whether the district court committed reversible error by including instructions in its charge to the jury that replicated the prima-facie-case and "burden-shifting" guidelines set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Unlike my colleagues on the panel, I am inclined to think that trial courts should be discouraged from parroting the legal technicalities of *McDonnell Douglas* and *Burdine* in charging

juries. Whether or not the inclusion of *McDonnell Douglas* verbiage in jury instructions may create an unnecessary risk that the jury will be confused, however, none of the members of the panel is persuaded that any potential for confusion in the case at bar was sufficiently great to necessitate a reversal here. Accordingly, and because we are not persuaded by the plaintiff's remaining assignments of error, we shall affirm the challenged judgment.

I

The plaintiff in this case, Bobby Brown, went to work for the defendant, Packaging Corporation of America, in 1962, when he was about 20 years old. In 1996 Mr. Brown was promoted to a crew leader's job. In that capacity he was responsible for the operation of one of two large paper machines at a plant in Counce, Tennessee. The promotion to crew leader was based entirely on seniority and was mandated by a collective bargaining agreement.

In 1999, when Mr. Brown was 57 years of age, plant manager Michael Synyard offered him a promotion to the position of temporary foreman. Brown accepted. The new job, unlike the old one, was not covered by the collective bargaining agreement.

Although Synyard did not need anyone's approval to promote Mr. Brown, he mentioned his decision to Mark Kowlzan, a vice president of the company. Kowlzan voiced serious reservations about Brown, asserting that he "lacked leadership" and pointing out that he had been convicted of arson for burning down his house. (The company had fired Brown at the time of the conviction, which occurred in 1989, but subsequently rehired him under a threat of litigation.) Kowlzan further told Synyard about an incident in which Brown had shown photographs of his wife in the nude to fellow employees at the plant – behavior that was not only bizarre, but that violated the company's sexual harassment policy. Synyard had not known about either the arson

conviction or the photograph incident, and he testified at trial that the information "dismayed" him.

Synyard promptly decided not to promote Brown after all, and he instructed area supervisor David Ellison to have Brown report for work on the next shift as a crew leader and not as a foreman. When Brown asked what had happened to his promotion, Ellison allegedly told him that Mr. Kowlzan "wanted younger people and engineers to fill the job." Ellison testified that he never said any such thing.

Synyard met with Brown a day or two after the withdrawal of the promotion. This time Brown was told he was being kept on as crew leader because the man who was in line to succeed him in that job was far weaker than Brown as far as experience went. Synyard did not mention the arson or the nude photographs, testifying later that "I thought it was very humiliating and embarrassing, and I just didn't see the need of further embarrassing Bobby . . . ."

Synyard ultimately filled the temporary foreman's slot by promoting an employee named Jamie Mims. Mr. Mims was 40 years old.

Aggrieved by his failure to get the promotion he had been promised, Mr. Brown filed an age discrimination charge with the Equal Employment Opportunity Commission. The company submitted a response denying that Brown had been discriminated against because of age and asserting that Mims "displayed more initiative and exhibited better leadership characteristics." The response did not mention Brown's conviction for arson or the nude photograph incident.

Unable to conclude that a violation of the Age Discrimination Act had been established, the EEOC closed its file and notified Mr. Brown of his right to sue the employer within 90 days of his receipt of the notice. Brown exercised this right, filing an action in the United States District Court

for the Western District of Tennessee and demanding a jury trial.

After denying a defense motion for summary judgment, the district court denied a motion *in limine* wherein Brown sought to exclude evidence of his arson conviction. The court granted a motion to exclude evidence that David Ellison, the area supervisor who first advised Brown that he was not being promoted, had been convicted of a misdemeanor. (In August of 1999 – after he had become an area supervisor – Ellison pleaded no contest to a misdemeanor charge of criminal trespass.)

When Brown's case went to trial, the district court took advantage of a recess to review its proposed jury instructions with the lawyers. The proposed charge included five pages of text adapted from the Supreme Court's opinion in *McDonnell Douglas*, 411 U.S. at 802-805. The language covered the four *McDonnell Douglas* elements of a prima facie case, the defendant's burden of articulating a nondiscriminatory reason for the challenged employment action, the plaintiff's obligation to prove that the proffered reason was a pretext, and methods by which pretext may be shown. The court also proposed to add the following caution:

> "Remember, the ultimate burden remains at all times on plaintiff to prove by a preponderance of the evidence that he was discriminated against because of age; therefore, it is not enough for plaintiff to simply prove or claim that the stated reasons for PCA's actions with regard to plaintiff were not believable or are not the true reasons for the actions. The reason for this is because plaintiff always must prove by a preponderance of the evidence that he was discriminated against because of his age. You must determine whether plaintiff has proved that the reasons given by PCA were a pretext for unlawful age discrimination, and you may consider all the evidence in making this determination."

Counsel for Mr. Brown objected that the proposed instructions were improper for two reasons. First, he maintained, Brown was offering not only indirect evidence of wrongful discrimination – the type of evidence dealt with in *McDonnell Douglas* – but direct evidence as well. Second, counsel argued, even where the evidence is purely indirect, it is confusing for a jury to be instructed on the elements of a prima facie case and (as counsel put it) "all that burden shifting business."

The trial court was unmoved by either argument, and the instruction was incorporated without change in the charge given the jury at the end of the case. The jury found in favor of the defendant, as we have said, and there has been a timely appeal from the judgment entered on the verdict.

## II

### A

We turn first to Mr. Brown's "direct evidence" argument. The gist of the argument is that the *McDonnell Douglas* paradigm relates only to cases where there is no direct evidence of wrongful discrimination; a plaintiff who has presented "some direct evidence of age discrimination," this court has said, ". . . need not make out a *prima facie* case under the *McDonnell Douglas* framework." *LaPointe v. United Autoworkers Local 600*, 103 F.3d 485, 488 n.3 (6th Cir. 1996). Mr. Brown submits that he presented direct evidence of discrimination when he testified that area manager Ellison told him he was not getting the promised promotion because vice president Kowlzan "wanted younger people . . . ."

Although Mr. Brown characterizes his testimony as direct evidence of discriminatory intent, our precedents suggest that it may be more accurate to characterize it as circumstantial evidence. See *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (evidence that one of the plaintiff's supervisors held the opinion that race was a factor in the

defendant's decision not to promote the plaintiff was not direct evidence of discrimination where the supervisor had no involvement in the decision and did not reveal the basis for his opinion). Ellison had no involvement in the decision not to promote Brown, and Ellison did not reveal the basis for his alleged insight into Kowlzan's thought processes.

We agree that the testimony in question does not fall within any of the four categories of proof described by the *McDonnell Douglas* Court in discussing the establishment of a prima facie case of discrimination.[1] On the other hand, the fact that the testimony fell outside the *McDonnell Douglas* paradigm does not detract from the fact that Brown also presented evidence that fit the paradigm exactly. In other words, Brown produced evidence that (1) he was over the age of 40, (2) he accepted a job for which he was qualified, (3) the job offer was withdrawn despite his qualifications, and (4) the position was ultimately filled by a much younger person. The evidence of Kowlzan's alleged bias tended to strengthen Brown's prima facie case, but it certainly did not render these four elements irrelevant – and Brown would have had a prima facie case under *McDonnell Douglas* even without the evidence of what Ellison was supposed to have said about Kowlzan.

---

[1] It is worth noting that the Supreme Court did not intend its discussion to limit the ways in which a plaintiff could establish a prima facie case. As the Court explained in a footnote, "[t]he facts necessarily will vary in [discrimination] cases, and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13.

To illustrate the point, we invite the reader to suppose that in the case at bar there had been a wealth of circumstantial evidence of discriminatory animus based on Brown's age, but to suppose further that Synyard had never taken any steps to fill the temporary foreman's job after withdrawing the offer to Brown. Brown might well have been able to make out a case for the jury, under this hypothesis, notwithstanding the absence of the fourth element in the *McDonnell Douglas* paradigm.

If an instruction based on *McDonnell Douglas* could pass muster without the circumstantial evidence involving Ellison, we are not persuaded that introduction of the Ellison evidence would necessitate a reversal – at least as long as the charge as a whole gave the jury to understand that its first task was to decide whether Packaging Corporation of America had been shown, by a preponderance of the evidence, to have discriminated against the plaintiff because of his being at least 40 years old. The court's charge did that, as we read it.

### B

Turning to Mr. Brown's second argument – the argument that it was confusing to instruct the jury on the details of the framework erected by the Supreme Court in the *McDonnell Douglas* case – I start with the observation that there was no jury (and thus no jury charge) in *McDonnell Douglas* itself. Decided by the Supreme Court in 1973, *McDonnell Douglas* was a race discrimination case brought under Title VII of the Civil Rights Act of 1964.[2] Not until enactment of the Civil Rights Act of 1991 did Congress provide for jury trials in Title VII cases. See 105 Stat. 1072, 42 U.S.C. § 1981a. Prior to that time a suit under Title VII was treated as a suit in equity, a type of case historically tried by the court without a jury. See *In re Lewis*, 845 F.2d 624, 626 n.1 (6th Cir. 1988).

The posture in which the *McDonnell Douglas* case reached the Supreme Court may be outlined as follows. The district court had dismissed on jurisdictional grounds a claim asserted by the plaintiff under § 703(a)(1) of the 1964 Civil Rights Act. The Eighth Circuit had reversed the dismissal and attempted, in the opinion it published, to set forth the standards that would govern the district court's adjudication of the claim on remand. The Supreme Court granted *certiorari* "[i]n order to clarify the standards governing the disposition of an action

---

[2] *Burdine*, a sex discrimination case decided in 1981, was also brought under Title VII.

challenging employment discrimination . . . ." *McDonnell Douglas*, 411 U.S. at 497-98. "The critical issue," as the Supreme Court explained, ". . . concerns *the order and allocation of proof* in a private, non-class-action challenging employment discrimination." *Id*. at 800 (emphasis supplied).

The "order and allocation of proof" are not matters for which juries are responsible – and, as the First Circuit pointed out in a leading case decided six years after *McDonnell Douglas*, the *McDonnell Douglas* opinion "was not written as a prospective jury charge  . . . ." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir. 1979). Heavily freighted with technical legal language ("prima facie case," *e.g.*), the *McDonnell Douglas* opinion was written for an audience of judges and lawyers. "[T]o read [the opinion's] technical aspects to a jury," the *Loeb* court said, ". . . will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination." *Id*. *Cf. Kitchen v. Chippawa Valley Schools*, 825 F.2d 1004, 1012 (6th Cir. 1987), where we quoted this passage from *Loeb* with approval.

I do not mean to suggest that there can never be a case in which the trial court will have discretion to use the framework of *McDonnell Douglas* as a guide in drafting plain-English instructions to the jury. See *Rowlett v. Anheuser Bush, Inc.*, 832 F.2d 194, 200 (1st Cir. 1987). Obviously, however, it remains the responsibility of the judge to determine whether the plaintiff has presented a prima facie case capable of withstanding a motion for summary judgment or a directed verdict – and the First Circuit has made it very clear that "the term 'prima facie case' need never be mentioned to the jurors." *Loeb*, 600 F.2d at 1016. Where there is a dispute as to whether the employer has met its burden of articulating a nondiscriminatory reason for the challenged employment action, similarly, "it will be for the judge to decide whether defendant has stated a legitimate reason with such specificity as to require plaintiff to prove it to be a pretext." *Id*. n. 16.

The Supreme Court has never rejected *Loeb*'s gloss on *McDonnell Douglas*. Neither has the Sixth Circuit. In our *Kitchen* opinion, on the contrary, after quoting the passage from *Loeb* set forth above, we declared that "a jury instruction will not automatically be erroneous simply because it does not precisely follow the legal niceties of *McDonnell Douglas* and *Burdine*." *Kitchen*, 825 F.2d at 1012.[3]

*In re Lewis*, 845 F.2d 624 (6th Cir. 1988), represents this circuit's strongest endorsement of the view taken by the First Circuit in *Loeb*. The *Lewis* case arose prior to the 1991 legislation that provided for jury trials in Title VII cases, and the portion of the appeal in *Lewis* that is relevant here dealt with jury instructions on a race discrimination claim brought under Michigan's Elliott-Larsen Civil Rights Act. Michigan's standard jury instructions, which the district court had used after rejecting a request for a *McDonnell Douglas*-type instruction, "deliberately eschewed" the *McDonnell Douglas* model. The Michigan Supreme Court Committee on Jury Instructions, which drafted the instruction at issue in *Lewis* (II Michigan Standard Jury Instructions 2d § 105.04 (quoted at 845 F.2d 634)), quoted the language of *Loeb* in explaining why the committee had purposely steered clear of the *McDonnell Douglas* formulation: a *McDonnell Douglas* instruction, said the committee, would "'add little to the juror's understanding

---

[3] In *Cronich v. Wayne County Community College*, 874 F.2d 359, 366 (6th Cir. 1989), we remarked, citing *Kitchen*, that "[a]n instruction incorporating [the shifting burden of proof standards articulated in *McDonnell Douglas* and *Burdine*] has been approved but not absolutely required by this court." What the court actually did in *Kitchen*, however, was uphold as "not erroneous" a jury charge challenged by the appellants precisely because it "*failed* to instruct the jury on the shifting burden of proof requirements [of *McDonnell Douglas* and *Burdine*]." *Kitchen*, 825 F.2d at 1012 and 1011 (emphasis supplied). And it hardly constitutes approval of instructions parroting the language of *McDonnell Douglas* to say that such instructions "will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination." *Id*. at 1012, quoting *Loeb*, 600 F.2d at 1016.

of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination.' . . ." *Id.*

This court agreed. Holding that there was no error in rejecting the *McDonnell Douglas* instruction tendered by the defendant at the time of trial, we voiced a clear preference for the instructions that eschewed the *McDonnell Douglas* model:

"We agree with the Committee on Jury Instructions. Rather than confuse the jurors with legal definitions of the burdens of proof, persuasion and production and how they shift under *McDonnell Douglas*, we find that the above instruction was a clear and preferable statement of the law. We therefore find no error in the district court's decision not to give defendant's Proposed Instruction No. 4." *Id.*

Other courts of appeals have likewise followed *Loeb*'s lead. See, *e.g., Cabrera v. Jakabovitz*, 24 F.3d 372, 380 (2d Cir. 1994) (bemoaning the fact that "lawyers are still prone to include in requested jury charges language that was written by appellate courts in the context of bench trials – language that is at best irrelevant, and at worst misleading to a jury"); *Sharkey v. Lasmo (AUL LTD.)*, 214 F.3d 371, 374 (2d Cir. 2000) ("We agree that juries should not be charged on the *McDonnell Douglas* burdening-shifting framework"); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) ("The jury . . . does not need to be lectured on the concepts that guide a judge in determining whether a case should go to the jury"); *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1137 (4th Cir. 1988) (burden-shifting instructions "are beyond the function and expertise of the jury, which need never hear the term '*prima facie* case'"); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992) ("Instructing the jury on the elements of a prima facie case, presumptions, and the shifting burden of proof is unnecessary and confusing"); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) (trial judge acted correctly in

declining "to walk the jury through the paradigm established by *McDonnell Douglas*");[4] *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 731 (8th Cir. 1992) (reiterating that "the *McDonnell Douglas* 'ritual is not well suited as a detailed instruction to the jury' . . ."); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (en banc) ("it is not normally appropriate to introduce the *McDonnell Douglas* burden-shifting framework to the jury"), *aff'd*, ___ U.S. ___, 123 S.Ct. 816 (2003); *Messina v. Kroblin Transportation Systems, Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990) ("The *McDonnell Douglas* inferences provide assistance to a judge as he addresses motions to dismiss, for summary judgment, and for directed verdict, but they are of little relevance to the jury"); *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999) ("We stress that it is unnecessary and inappropriate to instruct the jury on the *McDonnell Douglas* analysis").

But while most courts of appeals would agree that it is normally inappropriate to instruct the jury on the *McDonnell Douglas* analysis, seldom is it held to be reversible error for a trial court to do so as long as the instruction summarizes the law accurately. See, *e.g., Dudley, Messina, Mullen,* and *Sharkey*, all of which are cases where the giving of *McDonnell Douglas* instructions was held not to constitute prejudicial error. The use of such an instruction was cited as error in *Gordon*, but there were several grounds for reversal in that case and we do not know whether the Second Circuit panel would have been prepared to reverse solely on the *McDonnell Douglas* ground.

In the case at bar, after examining the instructions as a whole, we do not find that the potential for prejudice, if any, rises to a level that would require reversal. The question "is not whether an instruction was faultless in every respect, but

---

[4] But see *Lynch v. Belden and Co., Inc.*, 882 F.2d 262, 269 (7th Cir. 1989) ("it was proper for the district court to instruct the jury as to the *McDonnell Douglas/Burdine* formula for evaluating indirect evidence").

whether the jury, considering the instructions as a whole, was misled." *Messina*, 903 F.3d at 1309.  We do not believe that the jury was misled here.

C

During oral argument, counsel for Mr. Brown argued that the instruction quoted in Part I of this opinion – an instruction that included the words "it is not enough for plaintiff simply to prove or claim that the stated reasons for PCA's actions with regard to plaintiff were not believable or are not the true reasons for the actions" – adopted the "pretext-plus" theory rejected by the Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).  This argument was not presented to the district court, nor was it mentioned in Mr. Brown's briefs on appeal; accordingly, we need not address it.  If we were to address the argument, however, we should have no hesitancy in saying that it is without merit.

The instruction in question properly reminded the jury that "plaintiff must always prove by a preponderance of the evidence that he was discriminated against because of his age." The instruction also told the jury that Mr. Brown had to do more than prove that the company's stated reason for its action was a pretext.  This was an accurate statement of the law: "It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524, 519 (1993), as quoted in *Reeves*, 530 U.S. at 146-47. Even if the jury in the case at bar disbelieved the company's explanation for denying Mr. Brown the promotion, the *Reeves* and *St. Mary's Honor Center* cases teach, the jury could not return a verdict for Mr. Brown unless it was prepared to draw the inference from all of Mr. Brown's evidence  that the company was guilty of intentional age discrimination.

To be improper under *Reeves*, the instruction would have had to tell the jury that evidence of pretext must be supplemented by evidence more extensive than that necessary

to support the prima facie case described in *McDonnell Douglas*.  The instruction given here told the jury no such thing.

III

A

In his next assignment of error, Mr. Brown says that "[t]he district court committed reversible error in admitting evidence of Mr. Brown's 12 year old arson conviction to impeach his credibility."  But impeachment of credibility pursuant to Rule 609, Fed. R. Evid.,[5] was not the only basis on which the district court decided to admit evidence of the conviction.  As the court pointed out during the pretrial conference at which Brown's motion *in limine* was denied, the jury was going to hear about the arson conviction in any event, the company having declared its intent to show that the conviction was one of the reasons Brown was not promoted.  The district court ruled that the company could use the evidence for either purpose or both purposes.

---

[5]Under Rule 609(a), the credibility of a witness other than the defendant in a criminal trial may be attacked by evidence of his conviction of a crime punishable by imprisonment in excess of one year (or regardless of punishment if the crime involved dishonesty or false statement).

With respect to convictions more than 10 years old, Rule 609(b) provides as follows:

"Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.  However, evidence of a conviction more than 10 years old . . . is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

As far as the impeachment purpose is concerned, the district court satisfied itself that the advance written notice required by Rule 609(b) had been given. The court obviously thought that the "prejudicial effect" spoken of in Rule 609(b) would be minimal, given that the evidence could be put before the jury anyway for a purpose having nothing to do with Rule 609.

The district court's conclusion did not represent an abuse of discretion, as we see it. In any event, we are satisfied that the decision to admit evidence of Mr. Brown's conviction did not result in substantial prejudice. The challenged ruling thus provides no ground for reversal. See *United States v. Sloman*, 909 F.2d 176, 180-81 (6th Cir. 1990).

B

Finally, Mr. Brown maintains that evidence of David Ellison's misdemeanor criminal trespass conviction should have been admitted for the limited purpose of showing that the company's professed reliance on Mr. Brown's arson conviction as a reason for denying Brown the promised promotion was a pretext for age discrimination. If Ellison suffered no adverse employment action as a result of pleading to a misdemeanor charge, Brown's lawyer wanted the jury to infer, the denial of a promotion to Mr. Brown must have been attributable to something other than his arson conviction. Brown submits that the court's decision to exclude the Ellison evidence was reversible error.

We disagree. The district court relied heavily on the fact that the decision not to promote Brown occurred prior to Ellison's conviction. Ellison was not promoted following his misdemeanor conviction, moreover, but simply remained in the job he held before the conviction, just as Brown himself did. Under these circumstances, and given the disparity in the seriousness of the offenses, Ellison's conviction was pretty thin gruel as evidence of pretext. The court's exclusion of the misdemeanor conviction was not an abuse of discretion, in our opinion, and we do not think it was prejudicial in any event.

**AFFIRMED**.

---

**CONCURRENCE**

---

CLAY, Circuit Judge, concurring. Although I agree with the outcome reached in this case, as well as much of the reasoning expressed in the lead opinion, I write separately to express my disagreement with Part II.B of the lead opinion, which seeks to discourage district courts from utilizing the burden-shifting test enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) when giving jury instructions.[1]

Ordinarily, a district court should give a requested jury instruction when such instruction offers a correct statement of the law and is not irrelevant, redundant, or confusing. *See King v. Ford Motor Co.,* 209 F.3d 886, 897 (6th Cir. 2000) (holding that the "district court had discretion to instruct the jury in any manner it deemed appropriate, as long as it correctly stated [the appropriate] substantive law, instructed on the issues relevant to the case at hand, and did not mislead the jury"); *Kitchen v. Chippewa Valley Schs.,* 825 F.2d 1004, 1011 (6th Cir. 1987) ("A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading and prejudicial.") (citing *DSG Corp. v. Anderson,* 754 F.2d 678, 679 (6th Cir. 1985)). No one contests that the *McDonnell Douglas* burden-shifting test offers a correct description of the *prima facie* case required to establish circumstantial evidence of employment discrimination. Moreover, the test is not irrelevant, redundant, or confusing.

Certainly, this Court has never forbidden the use of the *McDonnell Douglas* test. In *Kitchen,* the issue was whether the district court committed reversible error in refusing to

---

[1]This concurring opinion, which Judge Haynes joins, constitutes the majority view regarding the use of the *McDonnell Douglas* burden-shifting test in jury instructions.

---

instruct a jury in a retaliation case, brought under Michigan state law, on the burden-shifting test. This Court decided that the district court did not err "because the jury's proper concern was with the ultimate question of retaliation and not with the potentially confusing shifting of evidentiary burdens." *Kitchen,* 825 F.2d at 1012. But affirming the district court's decision *not to give* an instruction cannot be equated with reversing a district court's decision *to give* the instruction. *Kitchen's* comment about potential confusion amounts to no more than dicta. Similarly, in *In re Lewis,* 845 F.2d 624, 634 (6th Cir. 1988), this Court affirmed the district court's decision not to give the *McDonnell Douglas* instruction. The Court made no finding that giving a *McDonnell Douglas* instruction would have been legally erroneous. It should not be gleaned from either of these cases that a district court errs in giving a *McDonnell Douglas* instruction on the basis of its allegedly confusing nature, since holding that an instruction is unnecessary or superfluous is quite different from holding that an instruction is actually detrimental to the jury's understanding of what it is to decide.

In determining that juries are not sufficiently sophisticated to understand the *McDonnell Douglas* test, the lead opinion essentially relies on dicta from other circuits disapproving of including the *McDonnell Douglas* test in jury instructions, but declining to reverse on such grounds.[2] *Sharkey v. Lasmo*

---

[2]Actually, some of the lead opinion's cited cases, like *Kitchen* and *Lewis,* rejected the notion that the burden-shifting framework is a necessary component of jury instructions in an employment discrimination case, but the cases did not expressly prohibit the framework's use. These cases merely provide some dicta suggesting that the burden-shifting approach is confusing to explain to jurors. *See Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016 (1st Cir. 1979) (acknowledging that "the subtleties of McDonnell Douglas are confusing" for judges and juries and that "to read its technical aspects to a jury [may confuse a juror]," but then stating that the use of *McDonnell Douglas* is workable because "we do not equate use of McDonnell Douglas with a requirement that the full formulation be read in haec verba to the jury"); *see also Gehring v. Case Corp.,* 43 F.3d 340, 343 (7th Cir. 1994) (rejecting the plaintiff's argument

*(AUL Ltd.), 214 F.3d 371, 374 (2d Cir. 2000); Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1321-22 (11th Cir. 1999); *Cabrera v. Jakabovitz,* 24 F.3d 372, 380-84 (2d Cir. 1994); *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 126 (5th Cir. 1992); *Messina v. Kroblin Transp. Sys. Inc.,* 903 F.2d 1306, 1308-09 (10th Cir. 1990); *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1137 (4th Cir. 1988); *see also Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) (observing that the inclusion of the *McDonnell Douglas* test in the jury instructions was erroneous but reversing on other grounds). The largely conclusory rationales detailed in those cases are less than persuasive.

Two main reasons generally are advanced in support of excluding the *McDonnell Douglas* test from jury instructions. The first rationale, based on the idea that judges should only use language that jurors can understand, implies that lay persons do not easily understand such terms as "*prima facie* case," "shifting burden," and "burden of proof." *See Cabrera,* 24 F.3d at 381; *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016 (1st Cir. 1979); Gerrilyn G. Brill, *Instructing the Jury in an Employment Discrimination Case,* 1998 FED. CTS. L. REV. 2, 4.5-4.6 (March 1998). Yet, as the partial dissent in *Loeb* noted, "[t]he difficulties involved in instructing a jury in a products liability case, where liability is alternately premised on the three theories of strict liability, negligence, and warranty are no less complex than the shifting burdens outlined in McDonnell Douglas." *Loeb,* 600 F.2d at 1024 (Bownes, J., concurring and dissenting). Similarly,

---

that he was entitled to a burden-shifting instruction); *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 731 (8th Cir. 1992) (affirming the district court's refusal to include the burden-shifting test in its jury instructions); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854-55 (9th Cir. 2002) (*en banc*) (mentioning, in dicta, that "it is not normally appropriate to introduce the McDonnell Douglas burden-shifting framework to the jury," as part of a general discussion about the relationship between the *McDonnell-Douglas* test and the single- and mixed-motive analyses), *aff'd,* – U.S. –, 123 S.Ct. 2148, 2003 WL 21310219 (June 9, 2003).

complicated terminology abounds in such areas of law as medical malpractice. *See, e.g.,* Joseph H. King, Jr., *Reconciling the Exercise of Judgment and the Objective Standard of Care in Medical Malpractice,* 52 OKLA. L. REV. 49, 69-70 (noting the potential confusion of "best judgment" language in jury instructions for medical malpractice lawsuits). Yet courts have not jettisoned these frameworks from jury instructions on the theory that juries are incapable of comprehending sophisticated nomenclature. Indeed, no legitimate distinction has been asserted between the products liability and medical malpractice contexts and the present context of employment discrimination. Thus, if a jury is capable of understanding the terms used in contexts such as those of products liability and medical malpractice, then there is no apparent reason why a jury should not be able to understand the terms used in the employment discrimination context.

Moreover, the notion that juries are too easily confused by such terminology is unexplained and unproven. The cases advancing this viewpoint do not cite any empirical data in drawing the conclusion that juries are not sufficiently capable of understanding *McDonnell Douglas*. The First Circuit's *Loeb* opinion was released not terribly long after *McDonnell Douglas* was decided, and it reflects the court's own confusion as to what constituted the settled law of shifting burdens in an employment discrimination case. Indeed, the First Circuit backed away from its earlier misgivings, acknowledging that the *Loeb* decision was influenced by its own confusion:

> Although this framework was considered complicated and cumbersome when it was first used in *McDonnell-Douglas,* with repeated use courts have become more comfortable with it, both for their own use in ruling on Title VII claims and for the jury's use in ruling on intentional discrimination. . . . It is a straightforward way of explaining how to consider

whether there is intentional discrimination in situations where such discrimination is not likely to be overt.

*Rowlett v. Anheuser-Busch, Inc.* 832 F.2d 194, 200 (1st Cir. 1987) (citation omitted), *abrogated on other grounds by Iacobucci v. Boulter,* 193 F.3d 14 (1st Cir. 1999). Thus, the First Circuit, which was the first to question the wholesale importation of *McDonnell Douglas* into jury instructions in *Loeb,* backed off and embraced its use just a few years later.

When a trial court understands the law, it should be able to explain the law to a jury with relative ease. Trial courts are much more comfortable with *McDonnell Douglas* than they were twenty years ago when the Supreme Court was still road-mapping many burden of proof issues in employment discrimination law. The concerns that were present during the time *Loeb* was decided have largely abated. Even assuming that a jury might experience difficulty understanding an aspect of the burden-shifting structure, it can – and presumably will – request clarification from the court.

The other most frequently cited rationale is that once the case has been tried and is about to be submitted to the jury, the *McDonnell Douglas* analysis is no longer relevant because it is the function of the trial judge, not the jury, to engage in the burden-shifting analysis. That is, it is argued that if the judge determines that the plaintiff has not made out a *prima facie* case, the case is dismissed by way of a directed verdict in defendant's favor; if the plaintiff has established a *prima facie* case and the defendant has articulated no legitimate non-discriminatory reason for its adverse employment action, judgment is rendered for the plaintiff; and if the plaintiff has established a *prima facie* case and the defendant has articulated a legitimate non-discriminatory reason, the jury considers only whether the articulated reason is pretext for unlawful discrimination. *See, e.g.,* Deborah C. Malamud, *The Last*

*Minuet: Disparate Treatment After Hicks,* 93 MICH. L. REV. 2229, 2323 (1995).[3]

For thirty years, the *McDonnell Douglas* analysis has played an important role in the framework of employment discrimination law, and that analysis might assist a jury in understanding the dispute it has been asked to resolve. For instance, if the jury in this case had simply been told, "Packaging Corporation says that it decided not to promote Mr. Brown because of his arson conviction and an incident at work involving nude photographs of his wife; you decide whether you think they are lying and that their real reason was age discrimination (which you may infer if you believe four certain facts)," the jury might have wondered why the inquiry was framed in that way and focused only on that aspect of the trial. Only an explanation of the parties' initial respective burdens would shed further light on the reasons for the inquiry's focus. Thus, even if the giving of the *McDonnell Douglas* test is not required, it is often beneficial in assisting a jury's comprehension of the issues it has been asked to resolve.

This is particularly true when one recalls the policy grounds underlying the formulation of the *McDonnell Douglas* test in the first place. As the partial dissent in *Loeb* noted, the *McDonnell Douglas* test sought to "accommodate both the strong policy reasons for allowing plaintiff to proceed on the

---

[3] It is important to note that the parties' shifting burdens of production do not form the entirety of a jury's inquiry, which is, at its core, whether it finds by a preponderance of the evidence that the employer intentionally discriminated against the plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 775 (1983). Nevertheless, elements of a *prima facie* case frequently are still relevant after the case has gone to the jury. For instance, when an issue of fact remains as to one or more of the elements in a plaintiff's *prima facie* case, it is sometimes necessary to ask the jury, usually as part of a special verdict form, to engage in factfinding on that particular element. Even the *Loeb* court had acknowledged that *McDonnell Douglas* would continue to be relevant in this scenario. *Loeb,* 600 F.2d at 1016.

basis of a prima facie case and the further logical reason that the employer was the person best able to explain legitimate reasons for failing to hire (or firing) an otherwise qualified person who was within the protected class." *Loeb,* 600 F.2d at 1024 (Bownes, J., concurring and dissenting). Bearing these policy considerations in mind, the Supreme Court has endorsed the notion that a jury may infer discrimination if (1) it finds that the plaintiff has established the four elements of the *prima facie* case and (2) it disbelieves the employer's explanation for its adverse employment action(s). *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993)).[4] The policy reasons do not disappear in the face of an employer's ability to rebut a *prima facie* case by offering a legitimate, non-discriminatory reason for its actions. Thus, "[s]ome instruction to the jury on the prima facie case is necessary for a full appreciation of what is involved in discrimination cases." *Loeb,* 600 F.2d at 1024 (Bownes, J., concurring and dissenting).

Another problem with the lead opinion is that although it does not explicitly forbid district courts from giving the *McDonnell Douglas* instruction, it impliedly attempted to put them on notice that giving such an instruction may place in jeopardy the validity of a jury's verdict on appellate review.

---

[4]I adhere to this view notwithstanding language in *Hicks,* 509 U.S. at 510-11, that some commentators have read as dampening (or even eliminating) the relevance of *McDonnell Douglas* once the employer asserts a legitimate explanation for its actions. *See, e.g.,* Malamud, *supra,* at 2324. *Hicks* should not be read as attempting to supplant the *McDonnell Douglas* burden-shifting analysis at any stage of the litigation. *See* William R. Corbett, *Of Babies, Bathwater, and Throwing Out Proof Structures: It is Not Time to Jettison McDonnell Douglas,* 2 EMPLOYEE RTS. & EMP. POL'Y J. 361, 386-89 (1998) (arguing that the centrality of *McDonnell Douglas* in employment discrimination cases, and its relevance in jury instructions, remains after *Hicks*). Until the Supreme Court indicates otherwise, the *McDonnell Douglas* framework remains the driving force for burden of proof issues in cases resting on circumstantial evidence.

However, the lead opinion does not explain the circumstances under which a jury verdict might be overturned because of the use of the instruction, and when the verdict would not be overturned. Indeed, it does not explain why the district court did not abuse its discretion in this case, and it therefore provides little guidance to district courts in deciding whether to include such an instruction. The likely result from such a holding is that many district courts might simply refuse to give the instruction, instead determining that eliminating the risk of having a jury verdict overturned on appeal outweighs the benefit of providing a jury with a fully developed jury instruction on the applicable employment discrimination law issues.

Such a development would be unfortunate because describing the burden-shifting paradigm often can be beneficial in communicating to juries an understanding of employment discrimination law. Specifically, as discussed above, the *McDonnell Douglas* test provides jurors with a fleshed-out context for the purpose of resolving the factual disputes presented by the case being considered. The risk of confusion should be minimal or nonexistent when the judge explains to the jury that *McDonnell Douglas* provides a backdrop to the jurors' role as factfinders, and that their ultimate duty is to determine whether (1) the employer's proffered legitimate reason for an adverse employment action was pretextual and (2) the employer's true motive for taking the adverse action was illegal discrimination. *See, e.g., Mullen,* 853 F.2d at 1137 (finding no error in the jury instructions where the trial court directed the jury to focus on the central issues of whether the employer's asserted reason was pretext for employment discrimination).

The lead opinion is correct in stating that "it remains the responsibility of the judge to determine whether the plaintiff has presented a prima facie case capable of withstanding a motion of summary judgment or a directed verdict." However, this does not mean that the *McDonnell Douglas* instruction does not provide a useful purpose, or that it is superfluous or

confusing.    Indeed, the average juror is not incapable of understanding such language as "*prima facie* case" when it is properly explained.  As in any jury trial, it is the responsibility of the judge to define legal terms and to clarify any subsequent confusion during deliberations, as requested by the jury at the time. "So long as a trial court does not fall into the mistake of placing upon defendant an improper burden, its commenting on shifting burdens imports no error." *Loeb,* 600 F.2d at 1024 (Bownes, J., concurring and dissenting). Therefore, the district court's use of the *McDonnell Douglas* test with its burden-shifting paradigm was an appropriate tool in instructing the jury.