# STATE OF MICHIGAN

# COURT OF APPEALS

CRAIG HECHT,

        Plaintiff-Appellee,

v

NATIONAL HERITAGE ACADEMIES, INC.,

        Defendant-Appellant.

UNPUBLISHED
October 28, 2014

No. 306870
Genesee Circuit Court
LC No. 10-093161-CL

Before: SERVITTO, P.J., and CAVANAGH and WILDER, JJ.

WILDER, J. (*dissenting*).

I respectfully dissent. Unlike the majority, I would conclude that the trial court should not have submitted this case to the jury, and I would reverse.

I

This Court reviews de novo a trial court's decisions on motions for directed verdict and JNOV. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003); see also *Whitman v City of Burton*, 305 Mich App 16; 850 NW2d 621 (2014); slip op at 1. "Motions for directed verdict or JNOV are [both] essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case." *Taylor v Kent Radiology*, 286 Mich App 490, 499; 780 NW2d 900 (2009). In deciding these motions, the evidence and all legitimate inferences are reviewed in the light most favorable to the nonmoving party. *Sniecinski*, 469 Mich at 131. "A motion for directed verdict or JNOV should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Id.*

MCL 37.2202 provides, in pertinent part, the following:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race [or] color . . . .

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133, 153; 120 S Ct 2097; 147 L Ed 2d 105 (2000). A plaintiff can establish a claim of discrimination through direct or circumstantial evidence.

-1-

*Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). "Under the direct evidence test, a plaintiff must present direct proof that the discriminatory animus was causally related to the adverse employment decision." *Sniecinski*, 469 Mich at 135. As such, "direct evidence" is "evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle*, 464 Mich at 462 (quotations omitted; emphasis added).

Unlike a direct-evidence case, a case relying upon circumstantial evidence must satisfy the well-established burden-shifting approach adopted in *McDonnell Douglas v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 888 (1973). *DeBrow v Century 21 Great Lakes, Inc* (*After Remand*), 463 Mich 534, 537-540; 620 NW2d 836 (2001). This burden-shifting approach

> allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination . . . Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination. [*Sniecinski*, 469 Mich at 134 (quotation marks and citations omitted).]

II

Contrary to the majority, I would conclude that plaintiff failed to present any direct evidence of discrimination.

Evidence is not direct evidence when its consideration may lead to different conclusions. As such, if direct evidence is believed, it "proves the existence of a fact in issue *without inference or presumption*." *Hall v United States Dep't of Labor*, 476 F3d 847, 855 (CA 10, 2007) (emphasis added).[1] Moreover, "direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v Regional Lab Corp*, 292 F3d 1246, 1249 (CA 10, 2002). An alleged discriminatory comment constitutes direct evidence only when the plaintiff demonstrates a nexus between the alleged discriminatory comment and the adverse employment action. *Hall*, 476 F3d at 857. In other words, "[d]irect evidence is that which demonstrates 'a *specific* link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion *actually motivated* [the employer's] decision' to take the adverse employment action." *Deneen v Northwest Airlines, Inc*, 132 F3d 431, 436 (CA 8, 1998), quoting *Thomas v First Nat'l Bank of Wynne*, 111 F3d 64, 66 (CA 8, 1997) (brackets in *Deneen*; emphasis added). Direct evidence shows the defendant actually relied on the plaintiff's race in

---

[1] Although judicial decisions from foreign jurisdictions are not binding, the federal decisions cited throughout this opinion are persuasive and deserve consideration. *Hiner v Mojica*, 271 Mich App 604, 611-612; 722 NW2d 914 (2006).

making its decision. *Berroth v Farm Bureau Mut Ins Co*, 232 F Supp2d 1244, 1248 (D Kan, 2002).

"A statement that can be plausibly interpreted two different ways-one discriminatory and the other benign-does not constitute direct evidence." *Hall*, 476 F3d at 855, quoting *Pattend v Wal-Mart Stores East, Inc*, 300 F3d 21, 25 (CA 2, 2002). "Statements of personal opinion, even when reflecting personal bias or prejudice . . . are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements." *Id.*, citing *Shorter v ICG Holdings, Inc*, 188 F3d 1204, 1207 (CA 10, 1999).

In addition, as trial courts in this state instruct juries on a regular basis, "[d]irect evidence is evidence about what we actually see or hear. For example, if you look outside and see rain falling, that is direct evidence that it is raining." M Civ JI 3.10. "Circumstantial evidence is evidence that normally or reasonably leads to other facts. So, for example, if you see a person come in from outside wearing a raincoat covered with small drops of water, that would be circumstantial evidence that it is raining." *Id*.

The evidence establishes that when asked how Caine-Smith responded to the information that racial bantering had occurred previously at the school, Weaver answered that *she thought Caine-Smith's point* "was that it happens amongst African Americans . . . [a]nd it's not the other way around." In my judgment, Weaver's testimony is not direct evidence of discrimination because it did not recount an actual statement by Caine-Smith. *Nothing* in the record establishes what Caine-Smith actually said to Weaver, and Caine-Smith denied saying directly, or by implication, that statements made by African American employees should be treated differently than statements made by white employees. As such, Weaver's testimony constitutes, at best, Weaver's interpretation of what Caine-Smith *may* have meant by what she said. The majority classifies Weaver's testimony as rain; I would find that, in reality, it was only a wet raincoat.

As plaintiff himself argued in opposition to defendant's motion for directed verdict, Weaver's recollection of the meaning of Caine-Smith's alleged statement was subject to differing interpretations. See *Hall*, 476 F3d at 855. Plaintiff argued that it would not have been irrational for the jury to characterize Caine-Smith's point to mean that because racial bantering was prevalent at the school, plaintiff's discipline should not be severe, or to conclude that Caine-Smith felt pressure from the African American teachers aides to treat plaintiff differently because, as a white person, his racially-based comments could not be tolerated in the same way that comments made by African American could be. However, an equally plausible interpretation of Caine-Smith's alleged statement, as summarized by Weaver, is that Caine-Smith may have been searching for an explanation why no one had previously complained to the administration about racial bantering at the school. Regardless of the point Caine-Smith is alleged to have intended, however, Weaver's summation of what Caine-Smith allegedly said cannot *on its face* establish that plaintiff's race was a factor in Caine-Smith's decision to terminate plaintiff. *Danville*, 292 F3d at 1249; cf *Graham v Ford*, 237 Mich App 670, 677-678; 604 NW2d 713 (1999) (holding that a "plaintiff must establish direct proof that the discriminatory animus was causally related to the decisionmaker's action," such as a statement by the decisionmaker that he was " 'trying to get more black supervisors."). Rather, at a minimum, an *inference* must be drawn about what Caine-Smith *actually said* in order to conclude what her motivations were. Similarly, plaintiff's argument that Caine-Smith told

-3-

Weaver that there was a different "standard for African American people who told racial slurs as opposed to white people" requires an inference of racial motivation to be drawn, since there is no evidence, but merely plaintiff's argument, that Caine-Smith actually made this statement. Because evidence is not direct evidence unless it "proves the existence of a fact in issue *without* inference or presumption," *Hall*, 476 F3d at 855, defendant correctly argues that this case should have been evaluated by the trial court as a circumstantial-evidence case. *Hazle*, 464 Mich at 462.

The majority, citing to *DeBrow v Century 21 Great Lakes, Inc* (*After Remand*), 463 Mich 534, 540; 620 NW2d 836 (2001), concludes that Weaver's testimony of her *belief* about what Caine-Smith *meant* is sufficient to constitute direct evidence of discrimination. I disagree. It deserves emphasis, and should not be minimized, that there is *no* evidence in the record of what Caine-Smith *actually said* to Weaver. Thus, the majority, relying on *Debrow's* holding that permits inferences to be drawn from direct evidence, and disputes about those inferences to be resolved by the fact finder, extends this rule of law to conclude that direct evidence need not consist of evidence of what was *actually said* by the decision-maker, but may also encompass what the person hearing the decision-maker speak *thought* the decision-maker *meant*. I disagree that such testimony is legally sufficient to constitute direct evidence.

In his concurrence in *Debrow*, Justice Markman correctly foreshadowed the potential dangers of considering isolated remarks as direct evidence of discriminatory intent, given their potential for misuse in an effort to defeat a defendant's motion to dismiss:

> I write separately to express my concern that, particularly in the context of discrimination cases predicated upon age, there are a wide variety of innocent comments that, taken out of context and divorced from their meaning in common parlance, could be used by a plaintiff to defeat a motion for summary disposition.
>
> * * *
>
> Each of these phrases, similar to the one uttered in the present case, have colloquial meanings in the contemporary language that are distinct from their literal meanings and that are generally unconnected with any serious intimation of age animus. I join here with the majority because we lack any specific information concerning the context of defendant's comment, and because there may be circumstances in which it is not unreasonable to accord the comment a literal construction. However, I do not believe that the requirements of MCR 2.116(C)(10) will invariably be satisfied by a plaintiff who alleges remarks of this kind by an employer or a supervisor. Although an employer or a supervisor's comments must be viewed in "the light most favorable" to a plaintiff at the summary judgment stage, the proofs nevertheless must be sufficient to allow the trier of fact to *reasonably* conclude that age animus was a motivating factor resulting in an adverse employment action. *Lytle v Malady* (*On Rehearing*), 458 Mich 153, 176; 579 NW2d 906 (1998). Whether a comment removed from the ordinary vernacular would constitute "direct evidence" of discrimination or merely circumstantial evidence does not, in my judgment, alter the validity of this proposition. [*Id*. at 541-543 (MARKMAN, J., concurring.]

-4-

In my judgment, this case, involving not a statement actually made by the decision-maker, but an individual's constructed belief about what the decision-maker meant when she made her unknown (to this record) statement, fails the test of bringing forth evidence "sufficient to allow the trier of fact to *reasonably* conclude that [race] animus was a motivating factor in" plaintiff's termination. *Id.*

III

Because I would find that there is no direct evidence of discrimination in the record, I would evaluate this case under the burden-shifting approach set forth in *McDonnell Douglas v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 888 (1973), which requires a plaintiff to prove by circumstantial evidence that he was unlawfully terminated by defendant on the basis of his race. The plaintiff may establish a rebuttable prima facie case of discrimination by showing that (1) he belonged to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position that he held, and (4) he was discharged under circumstances which give rise to an inference of unlawful discrimination. *Hazle*, 464 Mich at 463. If a plaintiff comes forward with sufficient evidence to establish a rebuttable prima facie case of discrimination, the defendant is then required to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* at 464. If the defendant meets this requirement, the rebuttable presumption of a prima facie case "drops away," and the burden returns to plaintiff to show that defendant's articulated reason was mere pretext. *Id.* at 465-466. In general, pretext is established when a plaintiff "show[s] she was treated differently from similarly situated employees," *Lytle v Malady*, 458 Mich 153, 178 n 28; 579 NW2d 906 (1998), such as when other similarly situated employees "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Braithwaite v Timken Co*, 258 F3d 488, 497 (CA 6, 2001) (quotations omitted). Pretext can be also established by substantiating that the proffered reasons for the adverse employment action (1) "had no basis in fact," (2) "were not the actual factors motivating the decision," or (3) were "insufficient to justify the decision." *Cuddington v United Health Services, Inc*, 298 Mich App 264, 277; 826 NW2d 519 (2012), citing *Dubey v Stroh Brewery Co,* 185 Mich App 561, 565–566; 462 NW2d 758 (1990). Moreover, "the soundness of an employer's business judgment may not be questioned as a means of showing pretext." *Meagher v Wayne State Univ*, 222 Mich App 700, 712; 565 NW2d 401 (1997). The *McDonnell Douglas* burden-shifting approach assists trial courts in determining whether there is a jury-submissible issue on the ultimate fact question of unlawful discrimination. *Hazle*, 464 Mich at 466.

In my judgment, plaintiff failed to establish that defendant's stated reasons for terminating him were pretextual rather than legitimate and nondiscriminatory. Therefore, I would find that plaintiff failed to establish a prima facie case of discrimination and that his case never should have been submitted to the jury. Even assuming that plaintiff presented evidence to establish that he was discharged under circumstances which give rise to an inference of unlawful discrimination, defendant clearly rebutted that inference by introducing evidence that it terminated plaintiff's employment because 1) it had a legitimate belief, based on its own investigation which included plaintiff's written statement, that plaintiff made an inappropriate racial joke in a classroom while students were in the room, and, significantly for purposes of this case, 2) that plaintiff later tried to impede defendant's investigation concerning his remarks in an effort to avoid or mitigate discipline. Because "the soundness of an employer's business judgment may not be questioned as a means of showing pretext," *Meagher*, 222 Mich App at

-5-

712, it is clear from the record that plaintiff failed to show that defendant's proffered reasons (1) "had no basis in fact," (2) "were not the actual factors motivating the decision," or (3) were "insufficient to justify the decision." *Cuddington*, 298 Mich App at 277.

Plaintiff also failed to show he was similarly situated to any other employee who made racially-based remarks in the workplace. Whereas Code and Bell complained about his racial joke to Weaver, plaintiff presented no evidence that the administration had ever received any other complaint about racially-based remarks that required action. Defendant's failure to discipline African American employees for allegedly making racially-based remarks cannot be faulted or treated as discriminatory when it never received complaints about those remarks. Finally and significantly, plaintiff failed to show he was similarly situated to any other employee who interfered with the investigation of an incident. Plaintiff offered no evidence of another investigation to demonstrate another employee's interference and defendant's response.

The facts here are similar to the facts the Sixth Circuit was confronted with in *Braithwaite*. 258 F3d 488. The plaintiff in *Braithwaite* argued that other employees were never fired for violating "Rule 16" like he was, but the court rejected this argument because the plaintiff was fired for violating "Rule 16 *and* Rule 8."[2] *Id.* at 497. Here, plaintiff committed two terminable offenses and was fired, and but he failed to present evidence that any other employee committed two terminable offenses and was not fired. Accordingly, plaintiff could not show that defendant's legitimate, nondiscriminatory reasons for termination were pretextual because he established no other employees to whom he was similarly situated.

Plaintiff's claims, that his statement was not heard by students and he did not actually impede the investigation, cannot create issues of fact regarding the "soundness" of defendant's employment decision or whether that "decision was wise, shrewd, prudent, or competent. Instead, to establish pretext, the focus is on whether the decision was lawful, that is, one that is not motivated by a discriminatory animus." *Hazle*, 464 Mich at 464 n 7 (quotations and citations omitted). Here, Code testified that plaintiff got the student to say, "[W]e like the white tables. The white tables – the white is our favorite," and Bell declared in a written statement that plaintiff had asked him repeatedly to "change" his prior statement once plaintiff realized how serious the situation was. Plaintiff's attempt to claim that no students heard his comment, and his effort to focus on the fact that he never explicitly asked Bell to lie, do not somehow transform defendant's understanding following its investigation, and its business judgment as the result of those understandings, into an understanding having *no* basis in fact.

Because plaintiff failed to present direct evidence of discrimination and failed to present circumstantial evidence sufficient to survive the burden-shifting approach of *McDonnell Douglas*, plaintiff's claim failed as a matter of law and the case should not have been submitted to the jury. *Sniecinski*, 469 Mich at 131.

---

[2] Rule 8 related to "striking another person," and Rule 16 related to "threatening another person." *Braithwaite*, 258 F3d at 492. While neither of plaintiff's reasons for being discharged rises to the level of striking another person, impeding an employer's investigation clearly is a serious and sufficient to justify the decision to discharge an employee.

IV

In its opinion, the majority analyzes only whether the trial court properly denied defendant's motion for JNOV, and ignores the question whether the trial court erred by denying defendant's motion for directed verdict because it concludes that defendant has not appealed the trial court's denial of its directed verdict motion. I disagree with the majority's conclusion. In its appeal brief, defendant first challenges the legal sufficiency of the evidence submitted to the jury, and it then argues that the trial court should have granted *both* its motion for directed verdict and its subsequently filed motion for JNOV. As noted earlier in this opinion, "[m]otions for directed verdict or JNOV are [both] essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case." *Taylor*, 286 Mich App at 499.[3] Thus, because defendant challenged the legal sufficiency of the evidence submitted to the jury in both its motion for directed verdict and its motion for JNOV, this Court reviews de novo the trial court's rulings on those motions. *Id.* Because our de novo review in a case where there is no direct evidence of discrimination is conducted to "determin[e] whether there is a jury-submissible issue on the ultimate fact question of unlawful discrimination," *Hazle*, 464 Mich at 466, I would review both the trial court's denials of the motions for directed verdict and JNOV, find that plaintiff's evidence failed to establish a claim of racial discrimination as a matter of law, and reverse the jury verdict in plaintiff's favor on the basis that the case should not have been submitted to the jury.

The majority relies on *Brown v Packaging Corp of America*, 338 F3d 586, 591 (CA 6, 2003), for the proposition that the " 'order and allocation of proof' are not matters for which juries are responsible," and therefore concludes the *McDonnell Douglas* burden-shifting approach should not apply when reviewing decisions on motions for JNOV. *Brown,* however, is distinguishable and not inconsistent with the conclusion I would reach. First, the proposition the majority cites is from the Sixth Circuit's minority opinion. *Brown*, 338 F3d at 595 n 1. Moreover, the *Brown* majority explained that the courts not providing instruction to juries on the *McDonnell Douglas* burden-shifting instruction have typically done so in an effort to avoid confusing juries, even though juries are capable of seeking clarification of any confusion about the instruction, and even though the instruction could, at a minimum, "be beneficial in communicating to juries an understanding of employment discrimination law." *Id.* at 599. Second, *Brown* involved a claim that the jury was improperly instructed on the *McDonnell Douglas* burden-shifting approach, not whether the *McDonnell Douglas* burden-shifting approach applies to an appellate court's review whether a case should have been submitted to the jury.

V

For the foregoing reasons, I respectfully dissent.

/s/ Kurtis T. Wilder

---

[3] Again, the tests for motions for directed verdict and JNOV are the same—courts must review the evidence and all legitimate inferences in the light most favorable to the nonmoving party to determine whether a claim exists as a matter of law. *Sniecinski*, 469 Mich at 131.