**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0220n.06

**No. 17-1473**

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 30, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOANNE ALBERTY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COLUMBUS TOWNSHIP, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE:   CLAY, GIBBONS, and BUSH, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.**   Joanne Alberty brought suit against her former employer, Columbus Township, alleging that she was terminated from her position as Assistant to the Columbus Township Assessor in violation of the Age Discrimination in Employment Act ("ADEA").  The district court granted summary judgment for the Township and Alberty appealed.  For the reasons that follow, we affirm the district court's judgment.

I.

A.

Joanne Alberty, age 76 at the initiation of this suit, resides in St. Clair, Michigan.  The defendant, Columbus Township, is a municipal corporation in St. Clair County.  The Township, encompassing a rural area with only five elected officials, has annual revenues of approximately $800,000.00 that largely come from property taxes and state revenue sharing.  Alberty was first

hired by the Township as a Deputy Clerk in December 1997. From 2002 until 2013, she was the Assistant to the Township Assessor, Susan Hansman. While employed by the Township, Alberty worked 20 hours per week at a pay rate of $13.50 per hour. She did not receive any pay raises while she was employed by the Township.

In 2012, Bruce Christy was elected Township Supervisor. The other Board members at the time were Clerk Patricia Iseler, Trustee Stan Dudek, Treasurer Phoebe Duncan, and Trustee Dennis Eisenhardt. As Township Supervisor, Christy's primary focus was balancing the Township budget, which had experienced shortfalls from falling property values between 2008 and 2012. At the Township's March 2013 meeting, Christy announced a projected shortfall of $31,191.92 for the 2013-2014 budget. Pointing out that the previous year's budget had not balanced, Christy stated that the Township needed to evaluate its income and expenses and raised concerns about the cost of the assessing department. Stan Dudek agreed, noting that Hansman, the Assessor, worked for five different townships and might not be able to provide Columbus Township with the level of service it needed. The Board ultimately decided to advertise the assessor position in the newspaper so that it could get other, possibly cheaper, offers. At that meeting, Christy also recognized that "[i]f the Board decides to replace the assessor they would have to decide what to do with Joanne [Alberty] at that point." DE 14-8, Defendant's Ex. G: 3/12/13 Board Meeting Mins., Page ID 191.

Meanwhile, Alberty was seeking a pay raise based on her belief that the Township "compensated new hires lacking any experience and employed in the same or comparable positions" as Alberty at the same rate of pay Alberty still received. DE 1, Compl., Page ID 3. She first made an oral request to the Township Board in February 2013, and in April 2013 she submitted a written request. At the April meeting, the Board decided to "table the Joanne raise

issue" until May.  DE 14-10, Defendant's Ex. I: 4/9/13 Board Meeting Mins., Page ID 199. At the May 2013 meeting, Patricia Iseler moved to deny Alberty's request for a raise, supported by Stan Dudek.  Assessor Hansman then offered to take $0.50 from each parcel of her pay to give Alberty a $1.00 per hour raise.  With this new information, Iseler withdrew her original motion and the Board agreed to postpone the decision until the June meeting.

At the June meeting, Phoebe Duncan, supported by Dennis Eisenhardt, moved for a $2.00 per hour pay raise for Alberty, which failed.  There followed a discussion about potential ways to increase Alberty's pay, such as a $1.00 per hour raise or a quarterly bonus.  With Alberty's pay issue unresolved, Iseler moved to terminate Assessor Hansman's employment because of the Township's budget concerns.  The motion passed 3-2.  In the same meeting, after the motion to fire Hansman passed, Iseler moved to terminate Alberty's employment, again for budgetary reasons.  That motion also passed 3-2.  At the time she was terminated, Alberty was 74 years old and an at-will employee.  The Board then passed a motion to set the pay rate for deputies and clerical positions to $12.00 per hour for new hires, with a weekly hour limitation of 15 hours per week.

The Board convened a special meeting on June 25, 2013 to discuss proposals for the Assessor's position.  The Board considered proposals from three applicants: Peggy Chambers proposed $11.80 per parcel two days per week; Hansman, the previous Assessor, proposed $13.50 per parcel two days per week; and Lisa Griffin proposed $16.53 per parcel one day per week.  The Board voted to accept Chambers' proposal.  Chambers, who was present at the meeting, stated that she had her own assistant, Carly Kimmen, who would work for the hours and rate previously approved by the Board.  Kimmen was 30 years old at the time.

Hansman stated in her affidavit that Chambers had approached her at a continuing education class for assessors and told her that Bruce Christy had spoken with her about bidding on the Assessor's position in Columbus Township. Christy allegedly told Chambers how much Hansman charged and instructed her to bid less so she would get the position. Chambers also told Hansman that she had been looking for a job to get her step-daughter, Carly Kimmen, into assessing, and that Kimmen planned to be Chambers' apprentice in the new assessing position.

Kimmen's salary was subsequently raised from $12.00 per hour to $13.50 per hour less than a year after she started working for the Township, and was further raised to $18.00 per hour after she was certified as an assessor. Chambers was later terminated by the Township after losing her certification to assess properties.

B.

Alberty filed suit against the Township, claiming that it had violated the ADEA, 29 U.S.C. §§ 621–634. The Township moved for summary judgment, arguing that Alberty failed to produce direct or circumstantial evidence of discrimination and that she failed to prove that the Township's non-discriminatory reason for her termination was pretextual. The district court granted the Township's motion for summary judgment. It found that Alberty had failed to produce direct evidence of age discrimination and rejected Alberty's argument that the Township's proffered budgetary rationale for her termination was pretextual, noting that the record contained evidence that the Township was trying to cut costs. It reasoned that "[r]ather than raising an inference of age discrimination, the evidence suggests that Plaintiff was a casualty of the Township's desire to terminate Hansman." DE 24, Op. and Order, Page ID 1064. The court thus held that Alberty failed to prove that age was the "but-for" cause of her termination.

After the district court granted the Township's motion for summary judgment, Alberty filed this timely appeal.

## II.

When reviewing a district court's decision to grant summary judgment, this court applies the *de novo* standard of review. *Simpson v. Ernst & Young*, 100 F.3d 436, 440 (6th Cir. 1996). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine dispute of material fact, this court must view the facts "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a). A plaintiff bringing an ADEA claim "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 299–30 (6th Cir. 1990)). The Supreme Court has held that the ADEA does not permit "a mixed-motives" claim; instead, a plaintiff alleging a violation of § 623(a) must prove by a preponderance of the evidence that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 177 (2009). The plaintiff may do so using either direct or circumstantial evidence. *Id.* at 177–78.

III.

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Alberty argues that she has produced two pieces of direct evidence sufficient to support the conclusion that age was the "but-for" cause of her termination. We find, however, that Alberty's proffered evidence fails to "require" the conclusion that her termination was motivated by her age.

A.

As her first piece of direct evidence, Alberty proffers the following statement made by Iseler in her deposition about Carly Kimmen:

> Q: So you voted to terminate Ms. Alberty, knowing you were satisfied with the services she was providing in her position, and to hire a new person that you had no knowledge of, whatsoever, at all?
>
> A: The knowledge we have was from Peggy [Chambers] that this *young lady* was working with her as her assistant. And we took it at face value.

DE 18-9: Plaintiff's Ex: Deposition of Patricia Iseler, Page ID 830 (emphasis added). Alberty points to Iseler's use of the phrase "young lady" to describe Kimmen and reasons that, "[s]ince the Defendant[s] admittedly did not know the replacement's education, skills or abilities, according to Iseler the *only* thing that [mattered and] that they had to go on was her age." CA6 R. 16, Appellant Br., at 26.

Iseler's reference to Kimmen as a "young lady" is not direct evidence of age discrimination. "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir.

2008). Finding intent to discriminate from Iseler's words, however, requires several inferential leaps. One *could* postulate that Iseler's use of the phrase "young lady" was intended to underscore the age difference between Alberty and Kimmen. But it is far more likely that Iseler's words were a completely innocuous description of Kimmen. As the district court pointed out in its opinion, Iseler was in her early eighties when she called the 30-year-old Kimmen a "young lady."

This court has only found sufficient direct evidence of age discrimination where intent to discriminate is neither vague nor ambiguous, but is clear on the face of the evidence. For example, in *Scheick v. Tecumseh Public Schools*, we found that two statements about the Board "want[ing] someone *younger*" was sufficient direct evidence of age discrimination to survive a summary judgment motion. 766 F.3d 523, 530–31 (6th Cir. 2014) (emphasis added). In contrast, there was no comparative language used here—Iseler did not refer to Kimmen as a "young*er* lady." Even if Iseler was making some sort of commentary about Kimmen's age (which is doubtful), nothing from her statement indicates that Kimmen was hired because she was *younger* than Alberty. Finding such meaning in Iseler's words would require us "to draw further inferences to support a finding of discriminatory animus," *see Daugherty*, 544 F.3d at 708, which we will not do when evaluating direct evidence.

Additionally, the *Scheick* statements were made in a completely different context from Iseler's statement here. In *Sheick*, one of the statements was made during the plaintiff's performance review, and the other two were made during subsequent follow-up conversations in which the plaintiff was pressured to retire. *Scheick*, 766 F.3d at 530–31. However, Iseler referred to Kimmen as a "young lady" during her deposition, long after the decision to terminate Alberty had occurred, in response to a question about the Board's decision to hire a new person.

Alberty has produced nothing that shows any causal connection between Kimmen's being a "young lady" and the Board's decision to terminate Alberty.

Alberty further argues that because Iseler was the one who made the motion to terminate Alberty and had a decision-making role, her statement is probative of age discrimination. Alberty is correct to the extent that direct evidence of discrimination is more probative when it comes from those "in a position to influence the alleged [adverse employment] decision." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998)). However, the decision-maker's statements must still demonstrate bias. In *Ercegovich*, such statements were clearly biased: the vice president overseeing the company sales division allegedly said "[t]his company is being run by white haired old men waiting to retire, and this has to change" and told a personnel manager "that he did not want any employee over 50 years old on his staff." *Ercegovich*, 154 F.3d at 354 (alteration in original). As stated above, Iseler's use of phrase "young lady" does not suggest any discriminatory motive or intent, and her statement was made during her deposition, outside of the employment decision-making context. The sole fact that Iseler influenced the decision to terminate Alberty does not help Alberty's argument.

B.

As her second piece of direct evidence, Alberty proffers Hansman's statement in her affidavit that Chambers told her she had been approached by Christy about applying for the Assessor's position, and that Chambers had been seeking a position for her step-daughter to get into assessing.[1] She claims that Hansman's statement creates an issue of material fact because it

---

[1] The Township argues in its brief that Hansman's statements about what Chambers told her are hearsay and thus cannot be offered for the truth of the matter asserted. Even if the statements are presented for their underlying truth, there is no way that they constitute direct evidence of age discrimination. Thus, we do not find it necessary to reach the hearsay issue.

proves false Christy's testimony that the Board did not know who would replace Alberty when it terminated her.

Though it may cast doubt on one of the Township's defenses, this second piece of evidence still does not provide any direct evidence of age discrimination. In fact, its relation to age discrimination is even more attenuated than Iseler's "young lady" comment. Nothing in Hansman's affidavit suggests that Chambers told her that Christy made discriminatory remarks, or any remarks at all about Alberty's age. The statements Alberty references contain no direct support for "the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen*, 545 F.3d at 394. The district court thus did not err when it found that Alberty failed to produce direct evidence of age discrimination sufficient to survive a summary judgment motion.

## IV.

A plaintiff may also prove age discrimination using circumstantial evidence. *Gross*, 557 U.S. at 177–78. Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). This Circuit uses the *McDonnell Douglas* framework to analyze ADEA claims based on circumstantial evidence. *Id.* at 622; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must prove four elements to establish a prima facie case of age discrimination: "1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class." *Geiger*, 579 F.3d at 622; *see also Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998). Once a plaintiff sets forth a prima facie case

of age discrimination, "the burden of production shifts to the defendant to articulate a non-discriminatory reason for its action." *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). If a defendant has articulated a legitimate non-discriminatory reason for its action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's stated reason was a pretext for age discrimination. *Id.*

## A.

At this stage in the analysis, the parties dispute the scope of Alberty's burden of proof. Alberty argues that to reach a jury, she need show only that the Township's reason for the employment action was pretextual because that showing, coupled with her prima facie case, suffices. The Township argues that at every stage of the lawsuit, Alberty has the ultimate burden of presenting sufficient evidence for a jury to find that age discrimination was the "but-for" cause of her termination. The Township is correct.

During argument, Alberty's counsel repeatedly cited *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) to support her client's position, and the dissent also relies heavily on this case. In *Reeves*, the Supreme Court held that a plaintiff's prima facie case plus falsity of the employer's proffered reason *may* be sufficient to reach the jury. *Id.* at 147. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* But this quote from *Reeves* does not tell the whole story. The *Reeves* Court went on to explain that "[t]his is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability." *Id.* at 148. As the Supreme Court explained:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a

> matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* Our sister circuits have recognized and applied this exception to the general rule in *Reeves*. *See, e.g.*, *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) ("Even when a plaintiff demonstrates a prima facie case and pretext, his claim should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if 'no rational factfinder could conclude the action was discriminatory.'" (quoting *Reeves*, 120 S. Ct. at 2109)); *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) ("[F]ollowing *Reeves*, we decline to hold that *no* ADEA defendant may succeed on a summary judgment motion as long as the plaintiff has established a prima facie case and presented evidence of pretext."); *cf. Vadie v. Miss. State Univ.*, 218 F.3d 365, 373 n.23 (5th Cir. 2000) (concluding that after *Reeves* a prima facie case plus pretext evidence may be enough to permit a finding of discrimination under Title VII, but will not always be sufficient, with the ultimate issue remaining whether the evidence in the record as a whole "creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains").

We also implicitly rejected Alberty's interpretation of *Reeves* in *Brown v. Packaging Corp. of America*, 338 F.3d 586 (6th Cir. 2003). In that case, the plaintiff argued that a jury instruction including the words "it is not enough for plaintiff simply to prove or claim that the stated reasons for [the employer's] actions with regard to plaintiff were not believable or are not the true reasons for the actions" violated *Reeves*'s holding. *Id.* at 593. We indicated that had we needed to reach the issue, we would have rejected the plaintiff's argument, explaining that the instruction accurately stated the law because *Reeves* required a jury to return a verdict for the

employer "unless it was prepared to draw the inference from all of [plaintiff's] evidence that the [employer] was guilty of intentional age discrimination." *Id.* at 593–94.

Finally, *Reeves* must be read in conjunction with the Supreme Court's subsequent decision in *Gross* holding that because mixed-motive claims are not authorized under the ADEA, a plaintiff "retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross*, 557 U.S. at 177. *Reeves* made the point that in some cases, when there is sufficient evidence that the employer's stated reason for the adverse action is pretextual, "discrimination may well be the most likely alternative explanation." *Reeves*, 530 U.S. at 147. That is, in some cases, once the defendant's proffered rationale has been taken off the table, the most likely reason left standing is a discriminatory one. However, as made clear in *Gross*, the plaintiff must still show that age was the "but-for" cause of the adverse action, and in some cases, a prima facie case coupled with some evidence of pretext is not enough. In its reliance on *Reeves*, the dissent does not explain how Alberty's case conforms to *Gross*'s "but-for" requirement. And in fact, the *Reeves* Court itself noted that a prima facie case plus evidence of pretext would not survive a motion for summary judgment where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148. The dissent extends *Reeves* too far in arguing that it precludes summary judgment in Alberty's case.

Therefore, a prima facie case plus some evidence of pretext will not be sufficient for an age-discrimination suit based on circumstantial evidence to survive a summary judgment motion in every case. A reasonable jury must still be able to conclude, based on the record, that age was

the but-for cause of the challenged action. In this case, no reasonable jury could conclude that age was the but-for cause of Alberty's termination.

B.

Alberty can establish a prima facie case of age discrimination. At the time she was terminated, Alberty was 74—well above the requirement that a plaintiff be at least 40 years old at the time of the adverse employment action. *See, e.g.*, *Burzynski*, 264 F.3d at 622. It is undisputed that she was discharged, and the Township does not allege that she was not qualified for the position. The Township does attempt to argue that Alberty fails to meet the fourth element because the Board did not actively seek to replace her with a younger person, but merely honored the new assessor's wish to bring in her own assistant. But the fourth element of a prima facie age discrimination claim requires only that the plaintiff be replaced by "a significantly younger person," which this court generally defines as someone ten or more years younger than the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335–36 (6th Cir. 2003). Generally, the context of the replacement does not matter.[2] Because the Board replaced Alberty with Carly Kimmen, who was 30 years old when she took over Alberty's former job, Alberty has successfully set forth a prima facie age discrimination case using circumstantial evidence. However, the Township has articulated a legitimate non-discriminatory reason for Alberty's termination: she demanded a raise during a time when the Township Board was attempting to

---

[2] This court has decided a line of cases that suggest that the context of an employee's replacement *may* matter in certain limited circumstances. For example, we have held that an allegation that "the employer assigned the former employee's work to an independent contractor that decided to employ younger persons to do the plaintiff's work is, without more, insufficient to establish a prima facie case." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 786 (6th Cir. 2007) ("The Workers fail to allege any facts suggesting that [defendant-employer] had a role in choosing the temporary workers who would be assigned to the Piqua Plant or that it requested younger workers from the temporary employment agency."); *see also Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 772 (6th Cir. 2014) (holding no replacement occurred where employer requested temporary workers from outside company to fill certain positions, and plaintiff offered no evidence that employer requested young workers or played any role in choosing the workers the agency provided). Given that the Township had direct responsibility for hiring Alberty's replacement, none of those circumstances are present here.

avoid deficit spending. Thus, the burden shifts back to Alberty to prove by a preponderance of the evidence that the Township's stated reason—budgetary concerns—was a pretext for age discrimination.

C.

We acknowledge that the Township's "budgetary concerns" rationale seems to have arisen *after* Alberty initiated the lawsuit. A review of the record indicates that the Township's reasons for firing Alberty may have had more to do with its desire to terminate her boss rather than with budgetary concerns, but absolutely nothing indicates that age motivated her termination. Further, there is affirmative evidence in the record that at least some of the Board members had budgetary concerns. Thus, we hold that Alberty has not produced sufficient evidence of pretext to survive a summary judgment motion.

This Circuit recognizes three ways for a plaintiff to prove that the employer's stated reason is pretextual: (1) the reason has no basis in fact, (2) the reason did not actually motivate the discharge, or (3) the reason was insufficient to motivate the discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross*, 557 U.S. 167, *as recognized in Geiger*, 579 F.3d at 621. "Regardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (alteration in original) (internal quotation marks omitted)).

Alberty first argues that the financial rationale for her termination has no basis in fact because "[t]he Township never had an 'economic' need to reduce expenses" since it actually

-14-

"had <u>increasing</u> revenue in 2013 . . . ." CA6 R. 16, Appellant Br., at 32. Proving that the employer's reasons had no basis in fact requires "evidence that the reasons given by the employer simply did not happen." *Gray v. Toshiba America Consumer Prods., Inc.*, 263 F.3d 595, 600 (6th Cir. 2001). Alberty thus cannot merely produce evidence that the Township's budgetary concerns were exaggerated—she must show that the Township had no budgetary concerns and was not trying to cut costs. She fails to make this showing.

As affirmative evidence that the Township's stated reasons have no basis in fact, Alberty points to the "Profit and Loss Budget Overview" for April 2013 through March 2014, which estimates the Township's net income for that year as $78,808.08. She argues that this figure from the approved budget does not reflect Christy's projection that expenses would exceed revenues for the 2013-2014 fiscal year by $31,000. The estimate from the approved budget, however, does not raise an issue of material fact as to whether the Township's budgetary concerns were *nonexistent*. Although Alberty devotes several pages in her brief to attempting to discredit the Township's allegations about its financial situation, the record does contain evidence showing that the Township's budgetary concerns had *some* basis in fact. Property values had fallen in the years before Alberty's termination, and the Board discussed the decline at its meetings—for instance, in a March 2011 meeting, the Township agreed that based on budgetary concerns "it is prudent for the Township Board to review all operational costs and labor costs." The record also shows that the Township's Governmental Activities net assets decreased by $67,941 for the year ending on March 31, 2012. Finally, nothing in the record suggests that Christy's projected shortfall, which was based on numbers he had been given, was made in bad faith, despite Alberty's allegation that Christy's estimate was false.

As additional evidence that the Township's stated reason for her termination had no basis in fact, Alberty argues that at the time she was fired, the Board had never asked her if she would be willing to work for a lower wage or reduced hours. This argument also lacks merit. First, the record indicates that Alberty requested a raise on more than one occasion, so it would be natural for the Board to have assumed that she did *not* want to work for a reduced wage or fewer hours. Second, Alberty's argument ignores the fact that she was terminated in large part because the Board wanted to cut costs by terminating Assessor Hansman, and Alberty was Hansman's assistant. The Board was therefore not trying to cut costs solely by getting rid of Alberty. Instead, she "was a casualty of the Township's desire to terminate Hansman." DE 24, Op. and Order, Page ID 1064. Thus, even viewing the record in the light most favorable to Alberty, it cannot support her assertion that the Township's proffered reason has *no* basis in fact.

Alberty also argues that the Township's proffered reason did not actually motivate her discharge. To use the second prong from *Manzer*, the plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal." *Manzer*, 29 F.3d at 1084. However, the plaintiff indirectly "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* "[T]he evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).

Demonstrating a factual dispute as to whether the Township's proffered reason did not actually motivate Alberty's discharge is an admittedly easier task than demonstrating a factual dispute as to whether the reason had no basis in fact. We recognize that facts in the record, such as the positive fund balance for the 2012-2013 fiscal year and the Township's approved 2013-

2014 budget estimating the year's net income to be $78,808.08,[3] cast some doubt on the Township's stated reason for Alberty's termination. Nevertheless, we hold that Alberty cannot show a genuine issue of material fact regarding the second *Manzer* prong because she has not raised any facts that would show that an *illegal* motivation was the more likely reason for the Township's decision.

Records from the monthly Board meetings imply that Alberty may have been terminated because the Board wanted to fire Hansman, her boss. The Board appears to have simply deferred to the replacement's desire to bring on her own assistant. However, even if the Township terminated Alberty because it wanted to bring on a new assessor and chose to defer to her judgment regarding her assistant, that is still not an illegal basis for which to terminate an at-will employee. We thus find that Alberty has not proven "that an illegal motivation was *more* likely than that offered by the defendant." *Manzer*, 29 F.3d at 1084.[4]

As we have established, the *Reeves* Court clarified that a plaintiff's prima facie case plus some evidence of pretext is not always sufficient to reach a jury; for instance, "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."

---

[3] Alberty notes that Kimmen received a raise eight months after she started working for the Township, from $12.00 per hour to $13.50 per hour, and argues that this further casts doubt on the Township's budgetary rationale. We disagree. Alberty was actually making $13.50 per hour at the time she sought a raise and was terminated. She was terminated only after she sought a raise *exceeding* her pay of $13.50 per hour. Kimmen's initial raise thus did not surpass what the Township had been willing to pay Alberty for the same position.

[4] Although Alberty does not make an argument based on the final prong in *Manzer*—that the evidence was insufficient to motivate the discharge—she would be unable to establish pretext under that prong as well. *See Manzer*, 29 F.3d at 1084. Evidence that the employer's proffered reason was insufficient to motivate discharge "ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated the discharge of the plaintiff." *Gray*, 263 F.3d at 600 (citation omitted). The Township's rationale for terminating Alberty is fairly specific—her requests for a raise in combination with the Township's budgetary concerns—which limits the applicability of a sufficiency argument because it is difficult to produce evidence of other employees engaged in "substantially identical conduct." It is worth noting, though, that the Assessor, Susan Hansman, was also terminated for budgetary reasons. Alberty was, in fact, let go partly *because* the Board terminated Hansman. The fact that both the Assessor and the Assistant Assessor were terminated further undercuts Alberty's charge of age discrimination.

*Reeves*, 530 U.S. at 148. That statement describes Alberty's case perfectly. As discussed previously, even if Alberty has created a fact issue as to pretext, it is a weak issue. More importantly, the record contains "abundant" evidence that no discrimination occurred. Not a single member of the Township Board indicated that Alberty's age was a problem in any of the meeting minutes. Alberty has not alleged that anyone made age-based comments or jokes—or that anyone mentioned her age at all. At the time Alberty's replacement was hired, no one mentioned her youth or compared her age to Alberty's. Throughout the entire process of firing Alberty and hiring her replacement, no one ever mentioned age.

In all the post-*Reeves* age-discrimination cases Alberty relies on in her brief, the plaintiffs also made some allegations of age-biased statements or conduct. *See, e.g.*, *Wexler*, 317 F.3d at 570 (Among other instances of age-biased conduct, the company president asked if plaintiff was 60 years old and, on hearing that he was 59, said "[W]e both have been in the business 117 years. You don't need the aggravation, stress of management problems, customer problems . . . ."); *Scheick*, 766 F.3d at 527 (The Superintendent told plaintiff that the School Board "just want[ed] somebody younger.") Even in *Reeves*, the plaintiff alleged that a supervisor "had demonstrated age-based animus in his dealings with [plaintiff]." *Reeves*, 530 U.S. at 138. In contrast, Alberty has only Iseler's one reference to Carly Kimmen as a "young lady" in her deposition—and as explained earlier, this statement did not demonstrate discriminatory animus. There is simply nothing from which a reasonable jury could conclude that Alberty was fired *because of* her age.

Alberty was an at-will employee. While we speculate that her termination may have had more to do with the Township's desire to get rid of her boss, Assessor Hansman, than with its budgetary concerns, no rational jury could view the evidence in this case and conclude that age

was the but-for cause of Alberty's termination. Although it may seem unfair, the Township's decision did not violate the ADEA.

V.

Before concluding, a word about the difference between direct and circumstantial evidence: the dissent argues that our decision requires Alberty to submit direct evidence of age discrimination in order to survive summary judgment. The dissent is correct that this court has never before required a plaintiff to provide direct evidence of age discrimination to survive a summary judgment motion. But we have not created a new rule requiring direct evidence here. Direct evidence is a narrow category—it is "evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (emphasis added) (citation omitted). Circumstantial evidence, on the other hand, "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Under those definitions, direct evidence would be only that evidence where the employer explicitly says something like, "You are too old for this job." However, a comment such as, "This job seems to tire you out more than the other employees," would be circumstantial evidence, because it does not require the fact-finder to conclude that age discrimination was a motivating factor. Nonetheless, that kind of comment still raises the specter of age-based animus and makes it more probable that the employer took the adverse action because of age. The problem with Alberty's case is that the record is devoid of *either kind of evidence*. There is nothing that would "allow a factfinder to draw a reasonable inference that discrimination

occurred," *see id.*, because based on the record before the court a discriminatory motive is no more likely than any other motive.

*Reeves* held that "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. 133, 147 (2000). The key word, we believe, is "reasonably." That is, based on the record, a fact-finder must be able to draw a reasonable inference that the employer is trying to cover up discrimination. The record in this case would not allow such an inference.

VI.

Alberty has failed to produce evidence that would allow a reasonable juror to find that her age was the but-for reason for her termination. *See Anderson*, 477 U.S. at 248; *Gross*, 557 U.S. 176–77. In fact, the record is devoid of references to Alberty's age. In the absence of any genuine dispute of material fact, the district court properly granted summary judgment for the Township. We therefore affirm the district court.

**CLAY, Circuit Judge, dissenting.** This case should proceed to trial for a jury to determine whether the Township terminated Alberty because of her age. Alberty has provided abundant circumstantial evidence in support of her claim that the Township violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Even so, the majority faults Alberty for developing a record that lacks any direct admission by the Township that its termination decision was discriminatory. This Court has never before required a plaintiff to submit direct evidence of discrimination in order to survive summary judgment. Because a reasonable jury could find that Alberty was terminated because of her age, I respectfully dissent.

Alberty's case begins, as it must, with *prima facie* evidence of age discrimination. *See Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001) (applying burden-shifting evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Alberty was 74 years old when the Township terminated her in 2013, following sixteen successful years of working for the Township. (R. 24 at Page ID #1061.) Alberty had served the Township in several capacities over her sixteen-year tenure, spending five years as the deputy clerk followed by eleven years as the assistant to the Township's assessor. (*Id.* at 1059–60.) During this time, Alberty maintained an impeccable performance record. (R. 18-9 at PageID #823–24.) In fact, the former assessor, Susan Hansman, so valued Alberty's assistance that she petitioned the Township to give Alberty a raise. (R. 14-11 at PageID #212.) Hansman even suggested that her own compensation should be reduced so that Alberty's could be increased by $1.00 per hour. (*Id.*)

Inexplicably, the Township terminated Alberty on June 11, 2013. (R. 14-12 at PageID #221.) Within days, the Township hired a new employee to fill Alberty's shoes: Carly Kimmen. (R. 24 at PageID #1062.) Kimmen, age 30, was 44 years younger than Alberty. (*Id.*) Kimmen

was also the stepdaughter of Peggy Chambers, a new assessor who had just been hired to replace Hansman. (R. 18-15 at PageID #860.) Notwithstanding Kimmen's complete lack of relevant work experience, the Township treated Kimmen dramatically more favorably than it had treated Alberty. Whereas the Township never offered Alberty a raise—and terminated her shortly after she requested one—the Township raised Kimmen's wage on two separate occasions shortly after hiring her. (R. 18-3 at PageID #127–28.) The Township also provided Kimmen with training, grooming her as the new assessor's apprentice. (R. 18-2 at PageID #500; R. 18-15 at PageID #860.) And once Chambers put Kimmen on the path to certification as an assessor, Chambers allowed her own certification to expire. (R. 18-3 at PageID #661.) On this record, Alberty presents a strong case that the Township terminated her for the purpose of replacing her with a younger employee, in violation of the ADEA.

The Township asserts that it terminated Alberty due to budgetary concerns and not due to discriminatory animus. But based on the record below, a jury could reasonably reject this explanation. Indeed, a jury could find the Township's explanation so unsatisfactory and lacking in credibility that it can only be explained as an excuse that the Township concocted to cover up its discriminatory action. The Township's 2013–14 budget projected a surplus of $78,808.08. (R. 18-5 at PageID #686.) The Township had no trouble keeping Alberty on staff in the months leading up to her termination, and it even considered giving her a raise. The tide shifted, however, once Hansman left the position of assessor. Although the budget had not changed, the Township suddenly claimed to be concerned about a projected shortfall of $31,000. (R. 18-6 at PageID # 706.) Citing this imaginary shortfall, the Township terminated Alberty, making room for the new assessor to hire her much younger stepdaughter in Alberty's place. (*Id.*) Within days of Alberty's termination, the Township's budgetary concerns blinked out of existence. The

Township hired Kimmen at a starting wage of $12.00 per hour and began to pay for her training to become certified as an assessor. (R. 18-3 at PageID #664; R. 18-2 at PageID #500.) Between her wage and training expenses, Kimmen gave the Township negligible relief from the $13.50 per hour that it had been paying Alberty. Within months, and while continuing to invest in Kimmen's training, the Township raised Kimmen's wage to the exact wage of $13.50 per hour that the Township claims it could not afford to pay Alberty. (R 18-3 at Page ID #664–65.) Finally, when Kimmen completed the assessor training program, the Township raised Kimmen's wage even further to $18.00 per hour, ensuring that Kimmen was a far more expensive employee than Alberty had ever been. (*Id.*) The Township insists that its budgetary concerns were genuine, but pretext is an equally or more credible explanation. A jury should resolve this factual dispute.

The majority's decision to resolve the factual dispute against Alberty conflicts with the general summary judgment standard as well as the Supreme Court's specific guidance for ADEA cases, as set forth in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Where, as here, the plaintiff states a *prima facie* case of age discrimination and subsequently rebuts the employer's proffered non-discriminatory explanation as having no basis in fact, *Reeves* prohibits a grant of summary judgment where "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. at 133. A jury could reasonably draw such an inference in this case, where the Township's purported budgetary concerns cannot be squared with the Township's financial reality or with its differential treatment of Alberty's replacement.

By rejecting the Township's proffered non-discriminatory reason as having no basis in fact, the jury would resolve this case in Alberty's favor. As the majority acknowledges, once a

plaintiff establishes a *prima facie* case, the defendant must be found liable if it fails to proffer any non-discriminatory explanation whatsoever in rebuttal. That is, absent any other explanation, the *prima facie* case describes the but-for cause of the employee's termination. The same outcome logically follows if the defendant proffers only a single non-discriminatory explanation and the jury rejects this explanation as contrived. Indeed, there is no legal distinction between a defendant who provides no excuse whatsoever and a defendant who provides an excuse that is found to be a lie. Trial is therefore necessary where, as here, the plaintiff creates a genuine dispute as to whether the defendant's only proffered explanation has no basis in fact.

The majority incorrectly concludes that this case need not be sent to a jury, citing three reasons. *First*, the majority states that Alberty has "created only a weak issue of fact as to whether the employer's reason was untrue." But Alberty's case on this point could not be stronger, as the record indicates that the Township's concern about a $31,000 deficit was neither justified nor genuine. The existence of a deficit is flatly contradicted by the Township's budget, which projected a surplus of $78,808.08. Moreover, the Township replaced Alberty with an employee whose wage outstripped Alberty's in a matter of months and who, between her wage and training expenses, may have been a more expensive employee than Alberty from the outset. Alberty has thus created far more than "a weak issue of fact as to whether the employer's reason was untrue;" she has shown that the employer's reason is no more substantial than the thin air from which it was apparently plucked.

*Second*, the majority states that there is "abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *Id.* at 148. No such evidence can be found in the record. The only evidence that Alberty's termination was based on budgetary concerns is the

Township's repeated reference to its concerns about a $31,000 shortfall, and Alberty has shown that such concerns were unjustified. The Township's repeated invocation of this unsupportable excuse does not serve as independent evidence of a non-discriminatory purpose; a circular chain of evidence merely supports circular reasoning. Whether the Township's unjustified concerns were genuine is, at best, a credibility question for the jury.

*Finally*, the majority impugns Alberty's substantial record of circumstantial evidence because:

> Not a single member of the Township Board indicated that Alberty's age was a problem in any of the meeting minutes. Alberty has not alleged that anyone made age-based comments or jokes—or that anyone mentioned her age at all. At the time Alberty's replacement was hired, no one mentioned her youth or compared her age to Alberty's. Throughout the entire process of firing Alberty and hiring her replacement, no one ever mentioned age.

However, a mere lack of direct evidence does not weaken an otherwise ample record of circumstantial evidence. Otherwise, an employer could never be held liable for discrimination—no matter how suspicious the circumstances or how demonstrably false the employer's proffered explanation—as long as the employer did not admit to its discriminatory animus. Recognizing that direct evidence is both uncommon and unnecessary, the Supreme Court has explained that the evidence in an ADEA case "may be direct or circumstantial." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Alberty has met her burden to proceed to trial. I therefore respectfully dissent.